UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**KENNETH ROBERTS** | Crim. No. 2:13-CR-0502 (WJM)<br><br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

    Defendant Kenneth Roberts has been indicted for being a felon in possession of a firearm. This matter comes before the Court on Roberts' motion to suppress the firearm of which he is alleged to have possessed. In the alternative, Roberts requests that the Court hold an evidentiary hearing on his motion. For the reasons below, the will Court **DENY** Roberts' motion to suppress. The Court will also decline to hold an evidentiary hearing.

**I. BACKGROUND**

    On January 19, 2015, Union Police Department Officer Kevin Skipper observed a Subaru Legacy (the "Vehicle") with expired registration stickers on a Pennsylvania license plate. The person driving the vehicle was Kenneth Roberts. Officer Skipper ordered Roberts to pull over, approached the Vehicle, and had Roberts produce his license, registration, and insurance card. After informing Officer Skipper that the Vehicle was a rental, Roberts produced his license and a rental agreement from Dollar Rent-A-Car ("Dollar"). Officer Skipper then studied the rental agreement and noticed that Roberts was not listed as an authorized driver; instead, the agreement was solely between Dollar and Roberts' cousin, April Virhuez, and only Virhuez was authorized to drive the vehicle. In a brief supporting his motion to suppress, however, Roberts represents that "the auto was rented primarily for him to use and operate, that he alone paid the rental charges on the Subaru[,] and [that he] was a cousin of the renter."

    Upon learning that Roberts was not the authorized driver of the Vehicle, Officer Skipper phoned Dollar and informed the company of the situation. Dollar then confirmed that Roberts was not authorized to drive the Vehicle and that the rental agreement was consequently void. At Dollar's request, Officer Skipper called to have the Vehicle impounded. Defendant then left the scene on foot. After Defendant left the scene, a tow truck arrived to bring the Vehicle to a tow yard.

Officer Skipper claims that he forgot to leave the rental agreement in the Vehicle, which led him to follow the Vehicle to the tow yard. Once he reached Vehicle in the tow yard, Officer Skipper opened the front door so he could leave the agreement for Dollar. Upon opening the front door, however, Officer Skipper claims that he saw "the butt and grip of a handgun protruding from beneath the driver's seat."

After observing the handgun, Officer Skipper instructed the towing company to tow the vehicle to police headquarters. There, the Union Police Department removed the gun from the Vehicle. Police also recorded that the weapon was loaded and had a defaced serial number. Upon this discovery, Officer Skipper contacted Dollar and requested permission to conduct a full search of the Vehicle. After obtaining consent from Dollar, the police conducted a full search of the Vehicle and recovered additional items.

On September 17, 2015, a grand jury indicted Roberts on one count of being a felon in possession of a weapon. Roberts now moves to suppress the gun recovered from the Vehicle, arguing that it was obtained as a result of an illegal search. At the very least, Roberts contends that the Court should hold an evidentiary hearing regarding his suppression motion.

## II. DISCUSSION

For the reasons explained below, Roberts' motion to suppress will be denied. Moreover, the Court will not hold an evidentiary hearing.

### A. Motion to Suppress

The Fourth Amendment right to be free from unreasonable searches and seizures is a personal right and a defendant must establish standing to assert that right. *See United States v. Padilla*, 508 U.S. 77, 81-82 (1993). "Fourth Amendment decisions have established beyond any doubt that the interest in deterring illegal searches does not justify the exclusion of tainted evidence at the insistence of a party who was not the victim of the challenged practices." *United States v. Payner*, 447 U.S. 727, 735 (1980); *see also Rawlings v. Kentucky*, 448 U.S. 98, 104-06 (1980). Thus, "[t]o mount a successful motion to suppress, an accused must first establish that he personally has a legitimate expectation of privacy in the object that was searched." *United States v. Stringer*, 739 F.3d 391, 396 (8th Cir. 2014).

The Third Circuit has held that "as a general rule, the driver of a rental car who has been lent the car by the renter, but who is not listed on the rental agreement as an authorized driver, lacks a legitimate expectation of privacy in the car unless there exist extraordinary circumstances suggesting an expectation of privacy." *United States v. Kennedy*, 638 F.3d 159, 165 (3d Cir. 2011), *aff'g United States v. Kennedy*, Crim. No. 06-23, 2007 WL 1740747 (E.D.Pa. June 15, 2007). The rationale behind this rule is that an unauthorized driver cannot expect privacy in a rental vehicle because "he has no

cognizable property interest in the [] vehicle and therefore no accompanying right to exclude." *Id*. (citing *Rawlings v. Kentucky*, 448 U.S. 98, 100 (1980)).

Roberts seeks refuge in *Kennedy's* qualification that an unauthorized driver of a rental car may be able to overcome the general rule of no standing where extraordinary circumstances are present. *See id*. at 168 ("extraordinary circumstances [may] overcome the general rule that we adopt here"). The Sixth Circuit case *United States v. Smith* serves as the centerpiece for Roberts' argument. 283 F.3d 571 (6th Cir. 2001). In *Smith*, the Sixth Circuit found that a defendant had standing to claim an expectation of privacy in a rental vehicle that he was not authorized to drive. Recognizing that the defendant would generally not have standing, the Sixth Circuit noted that the defendant had a business relationship with the rental company because he personally called the company to obtain a reservation confirmation number. Moreover, he later relayed the confirmation number to the authorized driver of the vehicle, his wife, who then used the number to obtain possession of the vehicle. *Id*. at 686. Additionally, the defendant obtained the reservation by paying the rental company directly with his credit card. The case therefore presented "extraordinary circumstances" in which the defendant was the *de facto* renter of the vehicle. *Id*. at 587.

This case is distinguishable from *Smith*. Here, Roberts vaguely asserts that "the auto was rented primarily for him to use and operate, that he alone paid the rental charges on the Subaru[,] and [that he] was a cousin of the renter." Unlike the defendant in *Smith*, however, Roberts does not claim that he ever communicated with Dollar. He does not represent that he had a role in reserving the vehicle, nor does he set forth any facts indicating that he obtained a confirmation number and later relayed the number to his cousin. *See U.S. v. Akinola*, Crim. Action No. 11-310, 2013 WL 1103702, *8 (D.N.J. Mar. 15, 2013) (*Smith* exception not applicable even where defendant had communicated with rental company). While Roberts ambiguously alleges that "he alone paid the rental charges on the Subaru," he does not go so far as to say that he provided Dollar with his credit card information or that he paid Dollar directly. *Id.* at *8 n.6 (D.N.J. Mar. 15, 2013) (*Smith* exception not applicable where defendant did not pay rental company directly). Finally, while *Smith* recognized the intimate relationship that will typically exist between a married couple, the Court is unconvinced that the same level of closeness should be assumed to exist between cousins. *See id.* at *8 (*Smith* exception not applicable where defendant and authorized driver were dating but not married); *see also Obergefell v. Hodges*, 135 S.Ct. 2584, 2599 (2015) (marriage reflects "a two-person union unlike any other in its importance to the committed individuals"). This is especially true here because Roberts does not claim that he and Virhuez were particularly close – in fact, he says absolutely nothing regarding their connection other than the fact that they are related. In sum, *Smith* is inapplicable here.

Moreover, even if Roberts did have some expectation of privacy, his motion would still be denied. Although not addressed directly by the parties in their briefings, it is beyond dispute that Dollar was the lawful owner of the Vehicle. It is also undisputed that the gun was recovered *after* the car was impounded at the behest of Dollar. Any

expectation of privacy Roberts may have had was erased once Dollar directed Officer Skipper to have the vehicle impounded. *See Kennedy*, 638 F.3d at 168 (unauthorized driver's residual privacy expectations are "effectively terminated" once rental company orders impoundment).[1]

### B. Request for an Evidentiary Hearing

Rule 12 (c) of the Federal Rules of Criminal Procedure provide that a court "may" convene an evidentiary hearing on a motion to suppress evidence. Therefore, evidentiary hearings on suppression motions are not granted as a matter of course. *See* FED.R.CRIM.P. 12(c); *U.S. v. Hines*, 628 F.3d 101, 105 (3d Cir. 2010). A motion to suppress requires an evidentiary hearing "only if the motion is sufficiently specific, non-conjectural, and detailed to enable the court to conclude that (1) the defendant has presented a colorable constitutional claim, and (2) there are disputed issues of material fact that will affect the outcome of the motion to suppress." *Hines*, 628 F.3d at 106 (citing *United States v. Voigt*, 89 F.3d 1050, 1067 (3d Cir. 1996). Moreover, a claim will not be colorable if it merely presents bald-faced allegations of misconduct. *See U.S. v. Chambers*, 47 Fed.Appx. 85, 91 (3d Cir. 1996).

An evidentiary hearing is not required here. First, even accepting Roberts' allegations as true, they do not establish that the *Smith* exception is potentially applicable in this case. *See* Section II.A, *supra*. Moreover, "[a]n evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist." *U.S. v. Jihad*, 159 Fed.App'x 367, 369 (3d Cir. 2005) (quoting *U.S. v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000)). Roberts' request for an evidentiary hearing is premised on a single sentence in his reply brief in which he alleges vague and incomplete facts that, in his view, form the basis of a colorable constitutional claim. However, Roberts does not allege any definite facts explaining (1) how he paid for the Vehicle,[2] (2) the nature of his relationship with Virhuez, or (3) the extent to which he was

---

[1] Roberts does not contend that that the impoundment of the vehicle was an illegal seizure—but even if he did, such an argument would fail. "[A]ny seizure inquiry has two steps: Was there in fact a seizure? If so, was that seizure reasonable?" *U.S. v. Smith*, 575 F.3d 308, 313 (3d Cir. 2009). Assuming the impoundment of the Vehicle was a seizure, the Court concludes that the seizure was reasonable. Not only was Roberts not the owner of the Vehicle, he was not even authorized by the owner (Dollar) to drive it. Once Dollar caught wind of the fact that an unauthorized driver was handling its property, the company requested that Officer Skipper have the vehicle towed. In obliging that request, Officer Skipper was performing a valid community caretaking function, not an illegal seizure. *Smith*, 575 F.3d at 314 (focus of seizure inquiry should be on "the reasonableness of the vehicle impoundment for a community caretaking purpose")

[2] Importantly, he does not indicate whether he paid Dollar directly or whether he paid the company through Virhuez.

the Vehicle's primary driver.  Consequently, Roberts has not alleged specific, definite facts that would require an evidentiary hearing.

Moreover, even assuming *Smith* were applicable, Roberts would not have had an expectation of privacy in the Vehicle once it was impounded.  *See Kennedy*, 638 F.3d at 168; *see also* Section II.A., *supra*.  Because Officer Skippy recovered the weapon after the Vehicle was impounded, Roberts has no way of stating a colorable constitutional claim.  Consequently, Roberts' request for an evidentiary hearing is denied.

### III. CONCLUSION

For the foregoing reasons, both the motion to suppress and the request for an evidentiary hearing be **DENIED**.

                                              /s/ William J. Martini
                                      **WILLIAM J. MARTINI, U.S.D.J.**

**Date: January 28th, 2016**