UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNITED STATES**<br><br>v.<br><br>**KENNETH ROBERTS.** | Crim. No. 17-502 (WJM)<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.**

This matter comes before the Court on Defendant Kenneth Roberts' ("Defendant") *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  ECF No. 48.  Having carefully Defendant's submissions, and the Government's opposition thereto, ECF No. 50, and for the reasons explained below, Defendant's motion is **DENIED**.

## I.   BACKGROUND

### A.  Defendant's Underlying Criminal Offenses

Defendant is a thirty-seven-year-old inmate currently housed at the Federal Correctional Institution, Fort Dix ("FCI Fort Dix"), in New Jersey.  On April 29, 2016, Defendant pleaded guilty before this Court to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and (2).  ECF No. 25.  On September 8, 2016, this Court sentenced him to fifty-seven months of imprisonment, followed by three years of supervised release.  ECF Nos. 29, 30.

As a result of this offense, the late Honorable William H. Walls, U.S.D.J., found Defendant violated the conditions of supervised release related to a prior federal offense for conspiracy to possess with the intent to distribute crack cocaine in violation of 21 U.S.C. §§ 841 and 846.  *See United States v. Kenneth Roberts*, Crim. No. 07-549 (WHW), ECF Nos. 149, 150.  Judge Walls sentenced Defendant on November 15, 2016, to thirteen months of imprisonment for the supervised release violation, to be served concurrently with the fifty-seven-month sentence imposed by this Court.  *Id.*  Defendant was released from custody on or about October 24, 2018, at which time his three-year term of supervised release, related to his felon-in-possession offense, commenced.

Thereafter, in or around April of 2019, the Department of Homeland Security began investigating a New Jersey drug trafficking organization in which Defendant was involved. *See United States v. Kenneth Roberts*, Crim. No. 20-792 (JMV), ECF No. 1.  In February of 2020, Defendant and five other individuals were arrested for and charged with conspiracy to distribute and possess with intent to distribute narcotics.  *See id.*  Defendant

pleaded guilty on January 6, 2021, before the Honorable John M. Vazquez, U.S.D.J., to one count of conspiracy to distribute and possess with intent to distribute a mixture and substance containing a detectable amount of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. *Id.* at ECF No. 88. On May 27, 2021, Judge Vazquez sentenced Defendant to eighteen months of imprisonment, followed by three years of supervised release. *Id.* at ECF Nos. 110, 111.

By committing the drug offense to which he pleaded guilty before Judge Vazquez, Defendant violated the conditions of supervised release imposed by this Court for the felon-in-possession offense. Consequently, on June 3, 2021, this Court sentenced Defendant to a one-year term of imprisonment for the supervised release violation, to be served consecutive to the eighteen-month sentence imposed by Judge Vazquez. ECF No. 47. Defendant is scheduled to be released from FCI Fort Dix in approximately five months, on May 10, 2022. Gov't Opp. at 5, ECF No. 50.

### B. Defendant's Motion for Compassionate Release

Defendant now moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). He argues that a confluence of circumstances such as the ongoing Covid-19 pandemic, the threat of new Covid-19 variants, the harsh conditions of confinement at FCI Fort Dix, and his documented, pre-existing medical condition of asthma and related respiratory symptoms like wheezing and shortness of breath, for which he requires an inhaler, present "extraordinary and compelling" reasons warranting his release. Def. Br. at 5-9, 11-13, 24-28, 33, 35, ECF No. 48. In one part of his motion, Defendant states he tested positive for Covid-19 in June of 2021; in another part, he states he tested positive in January of 2021. *Id.* at 14, 16; Gov't Opp. at 17, n.8, ECF No. 50. While Defendant initially declined to receive the Covid-19 vaccine on or about August 6, 2021, Defendant claims he recently requested and is waiting to be vaccinated by FCI Fort Dix medical staff. *See* Gov't Ex. C, Covid-19 Vaccine Consent Form; Def. Br. at 14, ECF No. 48.

The Government opposes Defendant's motion on several grounds, arguing that he has failed to exhaust his administrative remedies, that he has not presented extraordinary and compelling reasons for a reduction of his sentence, and that the 18 U.S.C. § 3553(a) sentencing factors weigh against his release. *See generally* Gov't Opp., ECF No. 50. Attached to the Government's opposition brief is the bulk of Defendant's medical records from the past two years.

### II.   DISCUSSION

Although the Court generally has limited authority to modify a federally imposed sentence once it has commenced, *see In re Morris*, 345 F. App'x 796, 797 (3d Cir. 2009); *United States v. Loyal*, No. 19-725, 2021 WL 2284136, at *1 (D.N.J. June 3, 2021), 18 U.S.C. § 3582(c)(1)(A)(i) permits the Court to reduce an inmate's term of imprisonment if it finds that "extraordinary and compelling reasons warrant such a reduction." When an

inmate themself, as opposed to the Bureau of Prisons ("BOP"), files a compassionate release motion pursuant to this statute, the Court may grant the motion and reduce the term of imprisonment if it finds the following four elements satisfied: (1) the defendant has exhausted the administrative remedies available within the BOP prior to seeking judicial review; (2) "extraordinary and compelling" reasons exist to justify a reduction of the defendant's sentence; (3) the reduction would be consistent with applicable policy statements issued by the United States Sentencing Commission, and (4) the applicable sentencing factors under 18 U.S.C. § 3553(a) weigh in favor of the defendant's release. 18 U.S.C. § 3582(c)(1)(A); *see also Loyal*, 2021 WL 2284136, at *1.

Because the parties dispute whether Defendant has satisfied any of these four requirements, the Court addresses each one in turn.

### A. Exhaustion of Administrative Remedies

The Government argues that Defendant has failed to properly exhaust his administrative remedies within the BOP prior to filing the present motion. Gov't Opp. at 14, ECF No. 50. Under 18 U.S.C. § 3582(c)(1)(A), an inmate may petition a court for compassionate release only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf," or at least thirty days have lapsed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." This explicit requirement is mandatory and is "not susceptible to any judicially created exceptions." *United States v. Epstein*, No. 14-287, 2020 WL 1808616, at *2 (D.N.J. Apr. 9, 2020); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (strictly enforcing § 3582(c)'s exhaustion requirement).

Here, Defendant submitted a request to the Warden of his facility on October 8, 2021, "to be put on home confinement pursuant to the CARES Act and 18 U.S.C. § 3582(c)(1)(A) based on . . . having advanced asthma which is detrimental and/or deadly to have in this pandemic environment and being incarcerated." Gov't Ex. A, Inmate Request Form, ECF No. 50-1.

As to the substance of Defendant's request, the Government is correct that the Court has no authority to place Defendant in home confinement; "rather, that decision rests solely within the discretion of the BOP." *United States v. Warrington*, No. 18-179, 2021 WL 825400, at *2 (D.N.J. Mar. 4, 2021) (quoting *United States v. Calabretta*, No. 12-131, 2020 WL 6055441, at *4 (D.N.J. Oct. 14, 2020)) (internal quotation marks omitted). "The plain language of § 3582(c)(1)(A) gives the Court authority only to reduce the defendant's term of imprisonment, not to modify defendant's place of incarceration." *United States v. China*, No. 15-0203, 2021 WL 2472325, at *2, n.2 (D.N.J. June 16, 2021) (internal quotation marks omitted). That Defendant, a *pro se* litigant, used the phrase "home confinement" as opposed to "reduction in sentence" while still expressly invoking § 3582(c)(1)(A), however, is of no moment here, and will not preclude the Court from liberally construing his request to the Warden as one for compassionate release. *See, e.g.*,

*United States v. Hight*, 488 F. Supp. 3d 184, 191 (E.D. Pa. 2020) ("The Court is especially wary of imposing an overly-restrictive interpretation of the exhaustion requirement on defendants acting *pro se*, who might reasonably understand the term 'sentence reduction' to include transfer to home confinement.").

The critical question, then, is whether Defendant, after submitting his request to the Warden on October 8, 2021, waited the requisite period before filing the present motion for compassionate release. It is clear he did not. Contrary to § 3582(c)(1)(A), Defendant filed the present motion on October 28, 2021, before he received a denial letter, and only twenty days after submitting his administrative request. The Warden formally denied his request on November 1, 2021. Gov't Ex. B, Warden Response, ECF No. 50-2.

Accordingly, because § 3582(c)(1)(A) requires Defendant to have fully exhausted his administrative remedies *prior* to seeking relief on his own in this Court, and because Defendant has failed to do so, his motion must be denied. *See Raia*, 954 F.3d at 595 (finding defendant failed to comply with the exhaustion requirement where he filed a motion for compassionate release before the Warden had denied his request and before the lapse of thirty days); *Warrington*, 2021 WL 825400, at *3 (denying defendant's motion for compassionate release where he filed it before the Warden had denied his request and before the lapse of thirty days, even where thirty days had lapsed by the time the District Court issued its ruling).

### B. Extraordinary and Compelling Reasons and Applicable Policy Statements

Having found that Defendant has not exhausted his administrative remedies, the Court need not decide the merits of his motion. However, in the interest of judicial economy, and to provide further clarity for Defendant's benefit, the Court notes that Defendant's motion does not demonstrate the "extraordinary and compelling" reasons necessary to justify granting the relief he seeks, even if he were to cure the exhaustion defect. *See Warrington*, 2021 WL 825400, at *3; *China*, 2021 WL 2472325, at *2 (denying defendant's motion for failure to exhaust, but assuming hypothetical exhaustion to explain that the motion would still be denied on the merits); *Loyal*, 2021 WL 2284136, at *3 (denying defendant's motion for failure to exhaust and declining to reach the merits, but noting that "even if Defendant were to cure these jurisdictional defects, Defendant's motion does not meet the high bar for compassionate release").

"Section 3582(c)(1) does not itself define the circumstances that qualify as 'extraordinary and compelling.'" *United States v. Moe*, No. 17-277, 2021 WL 5277202, at *3 (D.N.J. Nov. 12, 2021). Rather, the Court looks primarily to the United States Sentencing Commission's policy statement at U.S.S.G. § 1B1.13 and the application notes therein. *Id.* Although the policy statement is not binding authority on inmate-initiated motions, it remains a useful guide for the Court in assessing an inmate's eligibility for compassionate release. *United States v. Andrews*, 12 F.4th 255, 260 (3d Cir.

4

2021); *accord United States v. Jefferson*, 2021 WL 4279626, at *2 (3d Cir. Sept. 21, 2021) ("[I]t is not error for a district court to consider the policy statement in its 'extraordinary and compelling' analysis, even if the policy statement is not ultimately binding on the court."). To that extent, the policy statement enumerates several non-exhaustive considerations that may support a finding of "extraordinary and compelling" reasons sufficient to warrant a reduction in sentence, including, as relevant here, the defendant's "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii).

Here, Defendant's medical records confirm, and the Government concedes, that Defendant suffers from moderate to severe asthma, a condition for which he requires one or more medications, including using nasal spray and an inhaler daily or as needed. *See* Gov't Ex. C, Aug. 9, 2021 Clinical Encounter Notes at 1, 3; Gov't Ex. C, Medication Summary; Def. Exs., Jan 1, 2020 and Feb. 6, 2020 Urgent Care Notes, ECF No. 48-1. The CDC's most recent guidance states that having moderate to severe asthma makes an individual "more likely to get severely ill from Covid-19," meaning the individual is more likely to be hospitalized, require intensive care, require a ventilator to help them breathe, or die from the virus. CDC, *People with Certain Medical Conditions*, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Dec. 19, 2021). Defendant asserts these risks are further exacerbated by FCI Fort Dix's inability to adequately contain and control the virus in its facilities. Def. Br. at 4-9, ECF No. 48. Indeed, in the March 4, 2021 decision in *Warrington*, this Court joined a growing number of district courts expressing concern about the conditions at FCI Fort Dix and the institution's inability to protect both inmates and staff as it faced unquestionably large, and largely uncontrolled, virus outbreaks. *Warrington*, 2021 WL 825400, at *4.

Nonetheless, despite Defendant's serious medical condition, and even considering FCI Fort Dix's past outbreaks, several factors prevent this Court from concluding that Defendant has presented "extraordinary and compelling" reasons warranting his release.

First, the Court is sympathetic to his concerns about potential complications from Covid-19, but his medical records from the BOP indicate that his asthma is being appropriately managed and treated by the BOP medical staff and is well-controlled through the use of prescription medication. *See, e.g.*, *United States v. Carlos Bess*, No. 16-522, 2021 WL 5277201, at *3 (D.N.J. Nov. 12, 2021).

Second, if Defendant previously contracted the virus in either January or June of 2021 as he claims, he fortunately, presumably fully recovered; his medical records do not suggest otherwise. The CDC continues to study reinfection rates, particularly in light of lesser understood, emerging variants, but maintains that "[c]ases of reinfection with Covid-19 have been reported, but remain rare." CDC, *Reinfection with Covid-19*, available at

5

https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (last visited Dec. 19, 2021).

Third, with zero active virus cases among inmates, only two active cases among staff, and 2,198 inmates fully vaccinated of its 3,328-inmate population, Covid-19 does not currently present an extraordinary threat to Defendant at FCI Fort Dix. *United States v. Wise*, No. 16-576, 2021 WL 2660258, at *3 (D.N.J. June 29, 2021); *see* BOP, *Covid-19 Vaccine Implementation*, available at https://www. bop.gov/coronavirus/ (last visited Dec. 20, 2021); BOP, *FCI Fort Dix*, available at https://www.bop.gov/locations/institutions/ftd/ (last visited Dec. 20, 2021).

Fourth, without any medical justification, Defendant declined to be vaccinated. Gov't Ex. C, Covid-19 Vaccine Consent Form. Although he "is within his rights to [do so]," he is voluntarily forgoing an opportunity for "self-care" offered by the BOP, and thus "any corresponding argument that he must be released because of potential complications were he to contract the virus rings hollow." *United States v. Jenkins*, No. 13-646, 2021 WL 5833424, at *5 (D.N.J. Dec. 9, 2021); *United States v. Brinson*, No. 19-153, 2021 WL 2451970, at *2 (D.N.J. June 16, 2021) ("[B]ecause Defendant was offered and refused the Covid-19 vaccine, he cannot establish that 'compelling and extraordinary reasons' justify his release."); *United States v. Fitzpatrick*, No. 19-357, 2021 WL 2201683, at *4 (D.N.J. May 28, 2021) ("[Defendant] declined to be vaccinated. As a result, this Court joins the numerous other courts who have found that such a decision demonstrates that a defendant has voluntarily foregone an opportunity for self-care offered by the BOP.").

### C. Applicable 18 U.S.C. § 3553(a) Factors

Because the Court denies Defendant's motion for failure to exhaust his administrative remedies, and would otherwise deny his motion on the merits for failure to demonstrate "extraordinary and compelling" reasons justifying his release, the Court need not address the § 3553(a) sentencing factors at this juncture. *See United States v. Craft*, No. 18-0085, 2021 WL 5448788, at *6 (D.N.J. Nov. 22, 2021).

### III. CONCLUSION

For the reasons explained above, Defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), ECF No. 48, is **DENIED**.

An appropriate Order shall follow.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: December 20, 2021**